2008 OK CIV APP 96

**Shelley Denise HODGE, now Wissinger, Plaintiff/Appellant,**

v.

**Scott Wylie HODGE, Defendant/Appellee.**

No. 105,329.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 12, 2008.

Arthur Kyle Swisher, Klingenbert & Associates, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Barry Kent Roberts, Norman, OK, for Defendant/Appellee.

CAROL M. HANSEN, Judge.

¶ 1 On February 14, 1984, Plaintiff, Shelley Denise Hodge, now Wissinger, [Wife] and Defendant, Scott Wylie Hodge, [Husband] were married. On May 1, 1985, Husband enlisted in the U.S. Air Force. On June 22, 1998, they were divorced by a consent decree.[1] Among other things, the decree awarded Wife "one-half Defendant's retirement pay from the military." Neither party appealed the decree.

¶ 2 On March 5, 2001, the trial court issued the first Qualified Domestic Relations Order (QDRO). On November 9, 2005, it issued a Qualified Domestic Relations Order Nunc Pro Tunc and Military Division Pension Order. The United States Defense Finance and Accounting Service (DFAS), the federal agency charged with the responsibility of reviewing, processing and implementing court orders dividing military retirement pay incident to state divorce proceedings, rejected both orders for their failure to follow military regulations pertaining to the drafting of state court orders dividing military retirement pay.[2]

¶ 3 On September 1, 2005, Husband retired from the U.S. Air Force and began receiving his military retirement payments. On May 3, 2006, the parties appeared before the trial court to seek assistance regarding the need for yet a third order to divide Husband's military retirement benefits incident to the decree. On March 27, 2007, subsequent to the hearing, the trial court issued an Order wherein it determined:

> The court finds that the Military Division Pension Order regulations are to be followed and the Court's Decree is corrected NUNC PRO TUNC TO REFLECT [as above] that the pension division is to be proportionalized as per Military Regulations. Plaintiff is entitled to one-half of Defendant's monthly disposable retired pay from date of marriage 2/14/84 to termination of marriage 6/22/98.

¶ 4 On April 4, 2007, Wife filed a Motion to Reconsider wherein she maintained the March 27th Order constituted an impermissible modification of the parties' decree because it unilaterally amended the unambiguous property division from 50% of Husband's total monthly retirement benefit to 50% of that benefit accrued from the date of marriage [February 14, 1984] through the termination of marriage [June 22, 1998].

¶ 5 Wife also argued Husband impermissibly modified her military retirement award in the decree. When he retired on Septem-

---

1. Paragraph 9 of the decree states, in relevant part:

    "The parties have made an agreement whereby they have settled their mutual claims concerning a division of all jointly acquired property, both real and personal, of which either or both of them are seized or possessed. Pursuant to said agreement and by Order of the Court, all right, title and interest in and to the following described property is hereby assigned, transferred and conveyed to the Plaintiff, free and clear of any claim on the part of Defendant, and Defendant is hereby restrained and enjoined from setting up or asserting any claim, right, title or interest in or to said property or any part thereof, to-wit: . . . ."

2. The Uniformed Services Former Spouses' Protection Act (USFSPA), (10 U.S.C. section 1408) prescribes specific regulations regarding acceptable language in state court orders dividing military retired pay incident to divorce.

ber 1, 2005, his election to receive U.S. Department of Veterans Affairs (V.A.) disability pay unilaterally reduced her military retirement award, because pursuant to federal law, DFAS will not honor a state court order which purports to divide retirement disability pay.

¶ 6 Thus, Wife submitted Husband should be required to pay out of his own funds each month the amount by which her award was reduced due to Husband's receipt of disability pay. She requested the trial court not to enter an amended QDRO, but, instead order Husband to pay her 50% of his gross retirement pay each month directly to her from his personal funds.[3]

¶ 7 Wife further argued that at the May 3, 2006, hearing the trial court should have ordered Husband to begin making immediate retirement payments of 50% of his gross retirement pay to her each month. Additionally, she urged retirement payment arrearages which had accrued since the September 1, 2005, retirement date should have been calculated and a judgment entered in her favor for all arrearages.

¶ 8 On November 14, 2007, after consideration of the parties briefs, the trial court entered an Order denying Wife's motion to reconsider.[4] To implement its March 27, 2007, Order, the trial court entered its Amended Domestic Relations Order so that payments could commence to Wife directly from DFAS. The Amended Domestic Relations Order ruled:

> Amount of Member's benefits to be paid by Plan to Former Spouse:
>
> The Former Spouse is awarded a percentage of the Member's disposable Military retired pay, to be computed by multiplying fifty percent (50%) times a fraction, the numerator of which is one hundred fifty eight (158) months of marriage during the Member's creditable military service, di-

vided by the Member's total number of months of creditable military service. Former Spouse shall receive her proportionate share of all cost of living adjustments.

¶ 9 Wife appeals, requesting review of the November 14, 2007, Order denying Wife's motion to reconsider the March 27, 2007, order correcting, nunc pro tunc, the decree; and the November 14, 2007, Amended Domestic Relations Order implementing the March 27, 2007, Order.

■ ¶ 10 The denial of a motion to reconsider an order correcting, nunc pro tunc, the property division of retirement benefits in a marital dissolution case and the domestic relations order implementing the nunc pro tunc order, are matters of equitable cognizance, and in reviewing such orders, the findings of the trial court should not be disturbed unless the trial court has abused its discretion or unless its findings were clearly against the weight of the evidence. *Hough v. Hough,* 2004 OK 45, 92 P.3d 695; *SMS Financial, L.L.C., v. Ragland,* 1995 OK CIV APP 160, 918 P.2d 400.

■ ¶ 11 Wife complains the trial court abused its discretion when it modified the parties' consent decree by reducing her 50% share of Husband's total military retirement to a lesser "proportionalized" amount. Title 43 O.S. § 134(A) provides, in relevant part: "Payments pertaining to the division of property are irrevocable and not subject to subsequent modification by the Court making the award."

¶ 12 In *Jackson v. Jackson,* 2002 OK 25, 45 P.3d 418, the divorce decree awarded the wife a percentage of the husband's firefighters' retirement. The issue was whether the trial court had authority to interpret the meaning of the retirement formula in the decree and to issue a subsequent QDRO

---

3. In the alternative, Wife argued that in the event the trial court determined a QDRO was required, the QDRO should reflect that she receive 50% of Husband's retirement pay, not a proportionalized amount limited to the time frame of the parties' marriage.

4. The order stated: "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Mo-

tion to Reconsider with Brief in Support is actually a motion for new trial and that same should be, and is hereby, DENIED."

In her Motion to Reconsider, Plaintiff requested the trial court review the motion pursuant to 12 O.S.2001 section 651(6) which provides a decision shall be vacated if it was not sustained by sufficient evidence or is contrary to law.

after two previous QDROs had been entered and rejected by the retirement plan. The Supreme Court stated, "... a trial court has the authority to issue a subsequent QDRO if an initial one contains some ambiguity concerning the proper division of a retirement benefit under an earlier entered divorce decree, as long as the latter QDRO does not alter what was awarded initially by the decree, but conforms to it." The Court also held, "... the court has no authority [in the QDRO] to add new provisions to the decree or to change substantive provisions already in the decree, under the guise of construing said decree."

¶ 13 In this case, when the trial court corrected, nunc pro tunc the consent decree to reflect that Wife's award be proportionalized [5] "as per Military Regulations," and when it implemented that order in its Amended Domestic Relations Order formula award,[6] the trial court modified the consent decree's award to Wife of "one-half Defendant's retirement pay from the military." [7]

¶ 14 The function of an order nunc pro tunc is to make the order speak the truth about what actually transpired. "Nunc pro tunc relief is limited to supplying *inadvertent clerical omission and correcting facial mistakes* in recording judicial acts that actually took place. In short, a nunc pro tunc order *can and will* place of record what was *actually decided* by the court *but was incorrectly recorded.* The device may neither be invoked as a vehicle to review a judgment (or to excise legal errors found in it) nor as a means to enter a different judgment." *Stork v. Stork,* 1995 OK 61, 898 P.2d 732.

¶ 15 Husband argues that in the March 27 Order, "... the trial court inter-preted the language [in the consent decree] so as to give it the completely rational meaning that the parties intended to divide only the benefits which accrued during the marriage. This interpretation is not only rational but is the one mandated by settled Oklahoma law." [8]

¶ 16 Because the decree's award of military retirement was entered into by agreement, the relevant principles of contract law apply. Title 15 O.S.2001 § 154 provides: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." The language in the decree dividing Husband's military retirement is clear and explicit. As such, there is no room for interpretation of the parties' intent.

¶ 17 In *Kittredge v. Kittredge,* 1995 OK 30, 911 P.2d 903, the Supreme Court held a consent decree awarding the wife a percentage of the husband's future income in lieu of property division was enforceable, even though the applicable statute would have prohibited an order to that effect. The parties to a consent decree may agree to obligations between themselves that exceed those required by law. Although a consent decree is not a judicial determination of the rights of the parties, it acquires the status of a judgment through the approval of the judge of the preexisting agreement of the parties. *See Holleyman v. Holleyman,* 2003 OK 48, 78 P.3d 921. Here, the consent decree clearly awards Wife 50% of Husband's military retirement, not limited to the extent the retirement funds were acquired during coverture. The trial court abused its discretion in modifying the consent decree by reducing her total military retirement award to a lesser proportionalized amount.

---

5. The proportionalized division of Husband's military retirement awarded Wife "... one-half of Defendant's monthly disposable retired pay from date of marriage 2/14/84 to termination of marriage 6/22/98."

6. The formula award, expressed in terms of a marital fraction, awarded Wife "... a percentage of the Member's disposable Military retired pay, to be computed by multiplying fifty percent (50%) times a fraction, the numerator of which is one hundred fifty eight (158) months of marriage during the Member's creditable military service, divided by the Member's total number of months of creditable military service."

7. Wife contends, and Husband does not dispute, that the military has no requirement an award of retirement benefits to a spouse be proportionalized or no requirement that such an award be divided equally between two dates.

8. Retirement funds of either spouse, to the extent they are acquired during coverture, are subject to division as jointly acquired property. *See Rice v. Rice,* 1988 OK 83, 762 P.2d 925.

¶ 18 Wife also submits the trial court abused its discretion when it failed to find Husband's post decree election to receive Veteran's Administration (V.A.) disability retirement pay impermissibly modified the consent decree by unilaterally reducing her military retirement award.[9]

¶ 19 The United States Former Spouses Protection Act [USFSPA] authorizes state courts to treat disposable retired or retainer pay as community property. "Disposable retired or retainer pay" is defined as "the total monthly retired or retainer pay to which a military member is entitled," less certain deductions. 10 U.S.C. § 1408(a)(4)(B).[10] *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), established that although "state courts have been granted the authority to treat disposable retired pay as community property, they have not been granted the authority to treat total retired pay [including disability pay] as community property."

¶ 20 In *Troxell v. Troxell*, 2001 OK CIV APP 96, 28 P.3d 1169, the Court of Civil Appeals addressed the issue of division of military retirement pay converted, post decree, to disability pay. The Court held that although a trial court cannot consider disability benefits as marital property, it "is not precluded from determining whether other assets are available to satisfy the non-military spouse's share of the marital property."

¶ 21 In *Hayes v. Hayes*, 2007 OK CIV APP 58, 164 P.3d 1128, the trial court awarded the wife a percentage of the husband's military retirement pay. When the husband later retired, he elected to receive VA disability benefits. The wife moved to enforce the divorce decree, arguing the husband's unilateral act of converting his retirement benefits to disability pay constituted an impermissible modification or evasion of the trial court's property division order. The

trial court denied her motion, finding it lacked authority to either prevent the husband from converting his retirement benefits to disability or require him to pay the wife a portion of his disability benefits.

¶ 22 The Court of Civil Appeals reversed that portion of the order finding the trial court lacked authority to require the husband to satisfy his previously determined obligation to the wife. The Court held:

> The Trial Court's decree of divorce does not require Husband's payments to wife to come from any particular source. Rather, the decree provides that wife shall receive an amount equal to a pro-rata share of Husband's eventual military retirement.[11] The decree memorializes Husband's legal obligation, which Husband may satisfy from whatever source of funds he chooses. Our holding today, therefore, does not conflict with Oklahoma's policy against modification of a final property division.

¶ 23 Although Husband argues Wife's request for relief is an impermissible attempt to modify a final property division, Wife does not request relief in an attempt to modify the agreed to property division in the decree; instead, she seeks to compel Husband to satisfy his previously adjudicated, unappealed and unmodified property division obligation. *See Hayes v. Hayes, supra.*

¶ 24 In the instant case, as in *Hayes*, the consent decree in awarding Wife "one-half Defendant's retirement pay from the military," memorializes Husband's legal obligation, but it does not require that Husband's payments to Wife come from any particular source. The trial court abused its discretion in failing to find Husband's conversion of a portion of his retirement benefits to disability benefits impermissibly modified the consent decree by unilaterally reducing her

---

9. Husband retired on September 1, 2005. Thereafter, he elected to receive a percentage of his retirement benefits as V.A. disability pay. The amount of Husband's monthly retirement pay which is considered disability pay is not a part of the record on appeal.

10. Pursuant to federal law, Husband can only receive disability benefits to the extent he waives a corresponding amount of his military retirement pay. The gross amount Husband receives as retirement pay is reduced dollar for dollar for the amount of disability pay he receives each month.

11. The divorce decree provided, in pertinent part: "... [Wife] is to receive 19.2% of [Husband's] net monthly military retirement pay...."

award of "one-half Defendant's retirement pay from the military."[12]

¶ 25 Therefore, for all of the above-stated reasons, the trial court abused its discretion in denying Wife's Motion for Reconsideration.

¶ 26 Finally, Wife argues the trial court abused its discretion when it entered the November 13, 2007, Amended QDRO. She urges the Amended QDRO represents another impermissible modification of the consent decree because the formula contained in it was not an award of 50% of Husband's retirement pay and was limited to 158 months. She contends that because of the impossibility of her receiving all of her award directly from the military each month, no domestic relations order should have been entered by the trial court. Instead, Husband should have been ordered to make payments of 50% of his gross (before deduction of any kind, including disability) benefits each month directly to her.

¶ 27 Based on this opinion's foregoing conclusion that the trial court abused its discretion in denying Wife's Motion to Reconsider the March 27 Order correcting, nunc pro tunc, the consent decree, it follows that the trial court also abused its discretion in entering the Amended QDRO, which implemented the March 27 Order.

¶ 28 Thus, the matter is REVERSED AND REMANDED for proceedings consistent with this opinion, including a determination of existence of Husband's assets available to satisfy Wife's military retirement award and a determination of the amount of military retirement pay arrearages Husband owes Wife.

ADAMS, P.J., and JOPLIN, J., concur.

---

12. Husband argues the Order denying Wife's Motion to Reconsider did not address the issue of Husband's post decree conversion of his military retirement to disability retirement, and there's no evidence to show the trial court even considered the issue. However, in her Motion to Reconsider, Wife argues that in its March 27, 2007, Order nunc pro tunc, which proportionalized the division of her award, the trial court also should have considered the effect of Husband's post decree conversion of his military benefits on her award.