2014 OK CIV APP 101

**Lisa Kristine JOBE, Petitioner/Appellee,**

v.

**Verlin Paul JOBE, Respondent/Appellant.**

**No. 111,160.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

July 24, 2014.

Certiorari Denied Dec. 8, 2014.

Pat Garrett, Edmond, Oklahoma, for Petitioner/Appellee.

Barry K. Roberts, Norman, Oklahoma, for Respondent/Appellant.

P. THOMAS THORNBRUGH, Judge.

¶ 1 Verlin Paul Jobe (Husband) appeals a decision of the district court awarding Lisa Kristine Jobe (Wife) $101,875 in back support alimony, and approximately $2,200 in fees. On review, we reverse the award of support alimony, and vacate the fee decision.

## BACKGROUND

¶ 2 The parties were divorced by consent decree in 2007. The court's final decree (Decree) provided the Husband would pay Wife support alimony in installments at a varying rate. The Decree stated that the alimony would end "on the 16th day of the month in which [child] graduates from high school." In April, 2008, before child graduated from high school, Wife remarried. After Wife remarried, Husband stopped making alimony payments. Almost four years later, on March 15, 2012, Wife filed for a contempt citation, arguing that Husband was in contempt because he had ceased making alimony payments. On August 23, 2012, Husband filed an application to terminate support alimony.

¶ 3 The district court granted the application to terminate, but found Husband in contempt as to past payments, and ordered him to pay back support alimony of $101,875. The court further awarded Wife approximately $2,200 in fees. Husband appeals these decisions.

## STANDARD OF REVIEW

¶ 4 The support alimony question in this case is determined by statutory interpretation. We review a court's interpretation of a statute *de novo*. *Boston Ave. Mgmt., Inc. v. Associated Res., Inc.*, 2007 OK 5, ¶ 10, 152 P.3d 880. The decision as to whether to award attorney fees in a divorce action or a related proceeding is equitable, within the discretion of the court, and involves judicial balancing of the equities. *Jackson v. Jackson*, 2002 OK 25, ¶ 21, 45 P.3d 418.

## I. TERMINATION OF ALIMONY PURSUANT TO 43 O.S. § 134

¶ 5 Central to this case is the interpretation of 43 O.S.2011 & Supp.2012 § 134(B), which provides in relevant part:

> The court shall also provide in the dissolution of marriage decree that upon the death or remarriage of the recipient, the payments for support, if not already accrued, shall terminate.... Upon proper application the court shall order payment of support terminated and the lien discharged after remarriage of the recipient, unless the recipient can make a proper showing that some amount of support is still needed and that circumstances have not rendered payment of the same inequitable, provided the recipient commences an action for such determination, within ninety (90) days of the date of such remarriage. Any modification of alimony payments shall be effective upon the date of the filing of the requested modification.

### A. Termination Provisions

¶ 6 The question presented is whether support alimony pursuant to a consent decree terminates on remarriage if the decree states another terminating event, and is silent regarding remarriage. Although the

parties concentrate their briefing on older cases, the Oklahoma Supreme Court most recently interpreted this statute in *Burrell v. Burrell*, 2007 OK 47, 192 P.3d 286, which clarified the prior case law.

¶ 7 As in this case, *Burrell* involved a consent decree. The decree in *Burrell* provided that support alimony would continue "until the Wife dies." *Id.* ¶ 3. The decree made no mention of any contingency involving remarriage. The *Burrell* Court found that "the divorce decree was silent as to the parties intent *vis a vis* the requirement for payments to .continue following the recipient's remarriage," and that the consent decree therefore "did not contain clear language indicating that payments would not terminate upon remarriage." *Id.* ¶ 15. The Court held that the alimony payments were therefore subject to the termination provisions of § 134(B).

¶ 8 The *Burrell* Court further found that the recipient did not commence an action in an attempt to demonstrate her continued need or the husband's ability to pay monthly support within 90 days, and held that that 90–day period provided by § 134(B) "would not be extended either because the recipient misconstrued the divorce decree or misunderstood the legal consequences of failing to commence such an action." *Id.* ¶ 14.

¶ 9 In this case, the Decree states that support will terminate on the 16th day of the month 'that the couple's child graduates from high school and is silent on the issue of remarriage. In *Burrell,* the Supreme Court clearly held that a consent decree ordering support alimony "for life" with no provision regarding remarriage did not contain "clear language indicating that payments would not terminate upon remarriage." We find no basis to distinguish this Decree from that discussed in *Burrell.* As in *Burrell,* the Decree contains no clear waiver of statutory termination upon remarriage.

### B. "Upon Proper Application"

¶ 10 *Burrell* also addressed an ambiguity in the drafting of § 134(B). The section first indicates that support will terminate "upon proper application." As the recipient has little reason to seek termination of support,

this could be interpreted as requiring the payor to move for termination. However, later in the same paragraph, the statute states that it is the recipient who must commence an action for a determination that alimony should continue. This ambiguity evidently led the district court in the instant case to rule that alimony did not terminate until Husband filed an application to terminate some four years after Wife remarried.

¶ 11 The facts and resulting rule of *Burrell,* however, are clear: In that case, the husband did not seek to terminate the support obligation until nine months after remarriage. Nonetheless, the Court held that the wife's failure to commence an action to continue support alimony within 90 days of remarriage was fatal to her claim. *Burrell* was clear that that "neither the statute nor our jurisprudence support continued alimony payments to the wife following her remarriage" under those circumstances. *Id.* ¶ 16.

¶ 12 The statute is therefore clarified. Unless the continuation of alimony after remarriage is clearly stated in a consent decree, support alimony ceases on remarriage. This termination is reversed only if the recipient commences a successful action to continue support alimony within 90 days of remarriage. We therefore hold that support alimony in this case terminated upon Wife's remarriage.

### II. DISGUISED CHILD SUPPORT

¶ 13 Wife argues that we should not apply the termination provisions of § 134(B) because the "alimony" agreement the parties presented to the court was, in fact, an agreement for "child support," and is therefore not subject to the law regarding termination of alimony upon remarriage. However, we note that the Decree is unambiguous that the installment payments were ordered as support alimony, and that Husband's child support obligation was to be satisfied by a different means—by assuming the children's medical and educational expenses. Wife now argues that these expenses were, in fact, considerably lower than the couple represented to the court during the divorce, and the child

support was instead being provided by the alimony payments.

¶ 14 Wife was represented by counsel during the divorce, and joined in stipulating to the court that the children's medical and educational expenses were equivalent to the guideline amount of child support, and would properly supplant that amount. Wife now appears to argue that the parties misrepresented this support, and the true source of child support was the alimony payments.

¶ 15 We find that divorcing parties who present an agreement to be rendered as a decree, while maintaining a "private understanding" that the decree provides rights contrary to its unambiguous language, do so at their own risk. The court will enforce the decree as *indicated by its unambiguous language,* not the parties' concealed intent. *See e.g., Hodge v. Hodge,* 2008 OK CIV APP 96, ¶¶ 16–17, 197 P.3d 511 (if provisions in a final consent decree are clear and unambiguous, the court cannot later modify those provisions). The district court could not go behind the unambiguous decree to recast an alimony payment as a property division or child support. If there was any discrepancy between the ordered child support and the actual payment, this should be raised by a child support proceeding.

¶ 16 We therefore reverse the decision of the district court that alimony did not terminate upon Wife's remarriage. We further reverse the court's award of a contempt citation, as our decision leaves no basis for contempt.

### III. FEES

¶ 17 Husband further appeals the court's fee award. When considering the issue of attorney fees in a divorce action, the trial court should consider the parties and all of the circumstances in the case, including the means and property of the respective parties under the property division. *Harmon v. Harmon,* 1983 OK 89, ¶ 19, 770 P.2d 1. "Before such an order will be reversed, it must clearly appear that the trial court abused its discretion." *Id.* (quoting *Carpenter v. Carpenter,* 1983 OK 2, ¶ 35, 657 P.2d 646). Husband admits that fees in this case

are not based upon a prevailing party status, but argues that there was no equitable reason to award fees if Wife was not, in fact, the prevailing party.

¶ 18 Husband's allegation of error is based upon his supposition that the court based its fee decision entirely on the status of Wife as prevailing party. Oklahoma law is clear that counsel-fee allowances in matrimonial disputes under 43 O.S.2011 § 110 *never depend* on being a prevailing party. *Barnett v. Barnett,* 1996 OK 60, 917 P.2d 473; *Barnes v. Barnes,* 2005 OK 1, 107 P.3d 560. Therefore, a change in prevailing party status alone does not require the reversal or remand of a fee decision, for the decision cannot depend *solely* on that factor. However, the record is limited as to what basis the district court considered in its fee award. Aside from prevailing party status, the record contains no evidence sufficient to allow us to determine if the trial court abused its discretion. We therefore vacate the fee award, and remand this matter for a new fee determination if the parties so desire.

### CONCLUSION

¶ 19 We reverse the decision of the district court and find the support alimony in this case terminated upon Wife's remarriage. We remand the matter to the district court to make an order reflecting this decision, and refunding any monies improperly paid pursuant to the district court's prior order. We vacate the court's fee decision and remand for a new fee determination if the parties so desire.

¶ 20 **REVERSED IN PART, VACATED IN PART AND REMANDED.**

FISCHER, P.J., and RAPP, J., concur.